Betty MARTIN, Appellant,

v.

HARTFORD UNDERWRITERS INSURANCE COMPANY, Appellee.

No. 85795.

Supreme Court of Oklahoma.

April 23, 1996.

Rehearing Denied June 19, 1996.

Greg A. Farrar, Farrar & Farrar, Tulsa, for Appellant.

Steven H. Holden and Mark T. Steele, Best, Sharp, Holden, Sheridan, Best & Sullivan, Tulsa, for Appellee.

WATT, Justice.

On October 4, 1991, Appellant Betty Martin was injured when she was knocked down and injured by her own car. Ms. Martin recited the facts in one of her answers to Appellee Hartford's interrogatories:

I was at the St. John's Health Club doing water aerobics at approximately 2:00 to 3:00 p.m. I went to pick up Katie [Martin, age three] at John Knox Day Care.[1] I parked the car [a 1980 Lincoln, Mark VI], locked it and went inside the John Knox Church to pick up Katie. I brought Katie out and put her in the right front seat of the car. I was attempting to get into the car. I had my right leg in the car with my keys in my hand. Somehow, Katie moved the gear shift enough to release the car from park. The car rolled backwards and the door knocked me down. The left front tire rolled over my knee and face ripping my face open from my lip to the middle of my scalp. The car continued to roll backwards, turned and stopped in the grass with Katie still in the car. After that, I think I blacked out for a minute while I was lying on the ground. There was a lot of blood and I started yelling. Finally the Assistant Pastor came out. Someone called the ambulance and I was transported to St. John Medical Center. I was in the hospital for two weeks and discharged with home nursing care every day for two weeks.

Ms. Martin's car was covered by an insurance policy issued by Hartford. Ms. Martin sued Hartford claiming coverage under her policy's terms, which provided in material part as follows:

We will pay compensatory damages which an insured is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury:

1. sustained by an insured; and

2. caused by an accident.

The language of the Hartford policy reflects the requirements of 36 O.S.Supp.1994 § 3636.B, which provides that uninsured motorist policies,

... shall provide coverage therein or supplemental thereto for the protection of persons insured thereunder who are *legally entitled to recover* damages from owners or operators of uninsured motor vehicles and hit-and-run motor vehicles because of bodily injury, sickness or disease, including death resulting therefrom ....

[Emphasis added.] Thus, unless Ms. Martin was "legally entitled to recover" damages from three-year old Katie Martin, Hartford correctly rejected her claim.

## DISCUSSION

■ We have held on many occasions that a child of tender years, generally one under the age of seven-years, "is incapable of personal negligence." *Connor v. Houtman*, 350 P.2d 311, 313 (Okla.1960). To the same effect see *Strong v. Allen*, 768 P.2d 369 (Okla. 1989); *Thomas v. Gilliam*, 774 P.2d 462, 466 (Okla.1989); and *Hampton By and Through Hampton v. Hammons*, 743 P.2d 1053, 1061 (Okla.1987). A very young child lacks the aptitude and background to understand the standard of behavior applicable to an older child. Consequently, she cannot perceive a risk and understand that conduct creating such a risk is unreasonable. She is, therefore, incapable of negligence.

■ Ms. Martin relies on *Uptegraft v. Home Ins. Co.*, 662 P.2d 681 (Okla.1983) and *Barfield v. Barfield*, 742 P.2d 1107 (Okla. 1987) and claims that, although Katie Martin would not have been liable to Betty Martin, Hartford may not use the fact that Katie Martin was a three-year old child as a defense to its uninsured motorist liability. Those cases stand for the proposition that an insured's rights against an uninsured motorist carrier are to be governed by contract law, not tort law, and that the insurer does not step into the shoes of the tortfeasor in determining the insurer's liability under the uninsured motorist policy. Neither *Uptegraft* nor *Barfield* supports Ms. Martin's contention.

In *Uptegraft* plaintiff had allowed the statute of limitations to run against the unin-

---

1. Despite having the same last name, Betty Martin and Katie Martin are not related.

sured motorist. We held that this fact did not defeat the plaintiffs uninsured motorist claim against his insurer. In *Barfield,* we held that an uninsured motorist insurer does not step into the uninsured tortfeasor's shoes and that the immunity from suit of a coworker under the Workers' Compensation Act did not defeat the plaintiffs uninsured motorist claim. We explained the meaning of the term "legally entitled to recover" in the following language in both *Uptegraft,* and *Barfield:*

> The words "legally entitled to recover" simply mean that the insured must be able to *establish fault on the part of the uninsured motorist* which gives rise to damages . . .

[Emphasis added.] 662 P.2d at 685, 742 P.2d at 1112. In *Barfield* we said, "In *Uptegraft* and the case at bar the *tortfeasor is at fault* and responsible for the injury but protected by a statute." [Emphasis added.] 742 P.2d at 1112, n. 1. Clearly, there must be a tortfeasor, someone who has committed a wrong from which the insured has suffered damage, before uninsured motorist coverage can come into play. Here, there was no tortfeasor because three-year old Katie Martin was, as a matter of law, innocent of any wrongdoing, as she was too young to understand the risk that moving the shift lever might cause the car to roll and injure Betty Martin.

Katie Martin is protected from liability here because she committed no wrong. This is an entirely different situation from that before us in *Uptegraft* and *Barfield.* In both of those cases there was a tortfeasor, but a statute immunized him from liability for conduct that otherwise would have been actionable. Here, however, no tort has been committed, so there can be no uninsured motorist coverage.

Ms. Martin cites *Sumwalt v. Allstate Insurance Company,* 12 Ohio St.3d 294, 466 N.E.2d 544 (Ohio 1984), in which the Ohio Supreme Court held that an uninsured motorist carrier could not rely on the parent-child immunity doctrine, although the insured had been injured by the negligence of her unemancipated eleven-year old child. *Sumwalt* is distinguishable from the case at bar because the question of whether an eleven-year old is negligent in the first instance is a question of fact. Here, however, the three-year old child was free of negligence as a matter of law. We have also considered the other cases from other jurisdictions cited by Ms. Martin and find them unpersuasive as none of them involved injury arising from the acts of a three-year old.

CERTIORARI PREVIOUSLY GRANTED; COURT OF APPEALS OPINION VACATED; JUDGMENT OF DISTRICT COURT AFFIRMED.

ALMA WILSON, C.J., and LAVENDER, SIMMS, HARGRAVE and OPALA, JJ., concur.

KAUGER, V.C.J., and SUMMERS, J., concur in result.